United States Bankruptcy Court

Northern District of Illinois

Eastern Division

| | |
|---|---|
| In re:<br><br>Victoria & Marcos Medina<br><br>Debtor. | Case No. 17 B 18090<br><br>Chapter 7<br><br>Judge: Jack B. Schmetterer |

### *MEMORANDUM OPINION ON TRUSTEE'S OBJECTION TO DEBTORS' CLAIM OF EXEMPTIONS*

This objection relates to the case filed by Victoria Medina and Marcos Medina ("Medina's" or "Debtors") under Chapter 7 of the Bankruptcy Code, 11 U.S.C § 101 et *seq.*, on June 14, 2017 ("Petition Date"). Chapter 7 Trustee for the bankruptcy estate of the Debtors has filed an objection to certain exemptions claimed by the Debtors.

The Chapter 7 Trustee seeks an order that the Debtors' claimed exemption in and to the "Wedding Ring," claimed on the Debtors' Amended Schedule C filed on July 27, 2017, pursuant to 735 ILCS 5/12-1001(a), be disallowed. Counsel for both parties were asked if they wished to offer any evidence and both parties, through counsel have waived their right to offer evidence. However, Debtors' statement which was filed with the Debtors' response to the objection has been deemed by the Trustee and Court to remain of record and the Trustee has accepted the facts set forth therein as uncontroverted.

## *Undisputed Facts*

1. Victoria Medina asserts her wedding ring is an item of "necessary wearing apparel" thus exempted from the bankruptcy estate by operation of the exemption statute 735 ILCS 5/12-1001(a). This statute grants an unlimited exemption to "necessary wearing apparel" and other specified items.

2. The Debtors' original schedules did not claim the "necessary wearing apparel" exemption for the ring, and her schedule of exemptions was amended to argue that the wedding ring was "necessary wearing apparel" after Trustee identified that the ring was valued at an amount greater than its scheduled value of $1,500.

3. The ring in question was not worn to the Debtors' meeting of creditors.

4. The parties have stipulated that the only question at issue is whether the ring constitutes "necessary wearing apparel" as a matter of fact and law.

## *Jurisdiction*

Subject matter jurisdiction lies under 28 U.S.C. §1334(a). This is a core proceeding pursuant to 28 U.S.C. § 157 (2)(B) and was brought pursuant to Bankruptcy Rule 7001.

## *Discussion*

Trustee argues that Debtors fail to meet the necessary requirements to qualify for an exemption valued at least $1,500 pursuant to 735 ILCS 5/12-1001(a) which allows for an unlimited exemption for items that are deemed "necessary wearing apparel." Trustee distinguishes this case from *In re Robinson*, 811 F.3d 267 (7th Cir. 2016), which

held that a valuable first edition Book of Mormon was an exempt "bible" within the meaning of 735 ILCS 5/12-1001(a). Trustee states that "*Robinson's* footnote 10 makes clear that an item is not rendered "necessary just because sentimental value may be attached thereto." (Tr's. Reply 6.) Moreover, Trustee relies on footnote 10 to assert that necessary does not apply to all of the terms in subsection (a). (Tr's. Reply 6.)

Trustee relies on *In Re Deacon*, 27 F. Supp. 296 (S.D. Ill. 1939) holding that a watch, a consistory ring and a diamond shirt stud constituted necessary wearing apparel. The ruling in *Deacon* rested on a determination that the items in question were "worn upon the person of said bankrupt from the date of their purchase to date of bankruptcy." *In Re Deacon* 27 F. Supp. at 296. Trustee rests its entire argument on the premise that Debtors here did not maintain the wedding ring in constant usage as the Debtor wife failed to wear the ring to the meeting of creditors. Trustee does, however, concede that the definition of "wearing apparel" is broad enough to allow a wedding ring under same circumstances.

Debtors filed an Amended Schedule C on July 27, 2017. They maintain that the wedding ring is part of Debtor wife's necessary wearing apparel, and that their position is supported by Illinois law, and Seventh Circuit authority. They reference previous Illinois statute (Ill. Rev. Stat. 1937, C. 52, Sec 13, subd. 1.), which provided an exemption for "necessary wearing apparel" and its connection to the *Deacon* case holding that a ring worn by church organizations was exempt under the previous Illinois statute.

Debtors contend that *Deacon* also applies to the present statute (735 ILCS 5/12-1001(a)). Debtors rely on *Robinson* to stress that the statute does not have a dollar limit. "The Seventh Circuit held that "nothing suggests that the legislature meant to impose a dollar-value limitation on the items set forth in subsection (a)." *In re Robinson*, 811 F.3d at 270.

Contemporary wedding traditions and practices have evolved from their medieval origins. The word "wedding" dates back to the Old English word *weddung* or state of being wed.[1] Marriage is said to be one of the oldest customs of civilization.[2] The foundation of the institution of marriage is the actual wedding ceremony which has its origins in religious custom making the look and feel of a marriage ceremony vary widely by religion, region and time period. *Id.* at 35. Custom indicates that rings for the bride were not present in the Byzantine liturgy of the eighth-century. However, records indicate that by the tenth-century rings for the bride were commonplace. *Id.* Additionally, in the eleventh-century the exchange of rings for both the bride and the groom grew in popularity. *Id.*

The appearance of rings in the marriage ceremony served to mark officially the couple's entry into marriage. *Id.* However, there was conflict over the meaning of the

---

[1] Emma Mason, *Love and marriage in medieval England*, History Extra (Oct, 27, 2017, 1:13 PM), http://www.historyextra.com/article/feature/love-and-marriage-medieval-england-customs-vows-ceremony.

[2] Vicky Howard, BRIDES INC.: AMERICAN WEDDINGS AND THE BUSINESS OF TRADITION 35 (2008).

4

ring within the Christian wedding tradition. In fifteenth-and sixteenth-century Christianity, rings served to remind the couple of the union of Christ and the Church. *Id.* However, the tradition of the ring managed to remain in the wedding ceremony post Reformation. Martin Luther's marriage rite honored the custom of the ring, and the ring found its place within the Anglican prayer book traditions. The wedding ring thus became solidified as both a religious and social tradition. The ring became, "an active player in the making of the marriage—both a token of bodily devotion and a binding symbol of marital unity." *Id.*

The wedding ring also finds roots in the Judaic tradition. It serves a dual purpose within the Judaic tradition. It first serves as a permanent symbol of the couple's love and commitment for each other; and also serves as the object through which the betrothal is effected.[3] Traditionally, the ring exchanged during the Judaic ceremony is a simple ring that is comprised of pure gold and completely unadorned. The simplicity of the ring symbolizes the unbroken circle of marriage which is unmarred by conflict or distraction. *Id.*

The traditional wedding ceremony calls for the exchange of rings. However, it has become twentieth-century custom to gift an engagement ring to the bride as a sign of a future desire to enter the institution of marriage. This tradition is common in

---

[3] Naftali Silberberg, *The Wedding Band*, (Oct 27, 2017, 1:34 PM), http://www.chabad.org/library/article_cdo/aid/476748/jewish/The-Wedding-Band.htm.

Western cultures. The first documented diamond engagement ring was given by the Emperor Maximilian to Mary of Burgundy in 1377.[4] Many historians have focused on the marketing efforts of Madison Avenue to explain the tradition of the engagement ring. However Margaret Brinig notes that previous to the Depression diamond rings were not considered a required gift for engagement. *Id.* Brinig explains that one impetus towards popularity of the diamond engagement ring was the elimination, of the old cause of action known as "breach of promise to marry." *Id.*

A breach of promise to marry action "entitled a woman whose fiancé had broken off their engagement to sue him in assumpsit for damages, including the actual expenses she had incurred in reliance on the marriage. She might also recover for her embarrassment, humiliation, and loss of other marriage opportunities." *Id.* This cause of action provided damages for a woman who was potentially barred from offering an untarnished self to a future spouse and suffered what at the time would have socially represented a loss in "market value." *Id.* at 205

By 1945 sixteen states had eliminated breach of marriage promise actions (commonly referred to as heart balm actions). *Id.* at 205. It was not until after the elimination of heart balm actions that DeBeers teamed with the Madison Avenue advertising agency, Ayers, and released a marketing campaign with the memorable slogan that "a diamond is forever." *Id.* at 206. The position taken by the diamond

---

[4] Margaret F. Brinig, *Rings and Promises*, 6 J.L. Econ & Org. 203. 203 (1990).

industry is that the desire and the cultural shift to the engagement ring was due to their savvy marketing. However, Brinig takes the position that statutory changes abolishing the breach of promise action is responsible for the dramatic uptick.[5] Brinig links the abolishment of equitable relief for a jilted Bride, to the new tradition of purchasing a wedding ring worth a large portion of the potential Groom's annual salary with the rise in popularity of the engagement ring.

Regardless of what served as the catalyst for the cultural adaptation of the engagement ring, the cultural shift to what now is almost considered a norm for wearing both a wedding band and an engagement ring is one that many Americans observe regardless of cultural or religious affiliation. During the 2016 presidential debate much comment resulted after it was observed that Candidate Trump was not wearing a wedding band.[6] The wedding band has become so commonplace that prior to Prince William and Kate Middleton's 2011 marriage the Palace issued a proclamation, noting that the Prince would be opting not to wear a ring out of personal preference. *Id.*

In the instant matter, the Debtors have claimed a $1,500 exemption in a wedding ring pursuant to 735 ILCS 5/12-1001(a) as "necessary wearing apparel." The U.S. Trustee takes issue with the fact that the Debtor wife did not wear the ring in question at all times. The Debtor wife has filed a declaration stating that her ring is worn on social

---

[5] Margaret F. Brinig, *Rings and Promises*, J.L. Econ & Org. (1990), at 203
[6] Abby Ellin, *Men Who Don't Wear Wedding Bands—and Why*, N.Y. TIMES, MAY 7, 2016.

7

occasions i.e., "family gatherings, meetings at school, vacation, funerals, weddings and birthday celebrations." (Dec. at 1.) Furthermore, the Debtor wife states that she does not wear her ring while caring for her kids because it has caused minor abrasions.

The Court finds these facts persuasive. Although the wearing of a wedding ring has become common custom, even a necessary sign of being married, this custom is intended as an outwardly display to the world that the wearer has entered into the tradition of marriage or religious sacrament when viewed as such. When evaluating an exemption statute which might be interpreted either favorably or unfavorably vis-à-vis a debtor, authority instructs in favor of statutory interpretation supporting the exemption. *In re Barker*, 768 F.2d 191, 196 (7th Cir. 1985). The Debtor is still married and accordingly is entitled to participate in and publicly demonstrate her participation in a custom so commonly associated with matrimony. Consequently, not wearing a ring while engaged in parental duties does not undermine the meaning or significance of the ring.

It is concluded that a wedding, or engagement ring worn usually by a man or woman still married to the same person as when the ring was tendered before or during a wedding ceremony qualifies as "necessary wearing apparel" under the Illinois exemption. 735 ILCS 5/12-1001(a).

## CONCLUSION

For the reasons set forth above, by separate order to be entered, the Trustee's objection to debtor's claim of exemptions is overruled.

ENTER:

/s/ Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 20 day of November, 2017

NOV 20 2017

17 B 18090
In re: Victoria and Marcos Medina

## CERTIFICATE OF SERVICE

I, Dorothy Clay, certify that on November 20 2017, I caused to be served copies of the foregoing document to the following by electronic service through the Court's CM/ECF system or regular U.S. mail:

*[signature]*
Judicial Assistant/Deputy Clerk

### Electronic Service through CM/ECF System

David P Lloyd
David P. Lloyd, Ltd.
615B S. LaGrange Rd.
LaGrange, IL 60525
Counsel for Debtors

Justin R. Storer
David P Leibowitz, Esq.
Lakelaw
53 W. Jackson Boulevard
Suite 1115
Chicago, IL 60604
Trustee